JOSEPH H. HARRINGTON
Acting United States Attorney
Eastern District of Washington
Caitlin Baunsgard
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767




UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>KENNETH L. STONE,<br>Defendant. | 2:16-CR-0136-SMJ-2<br><br>PLEA AGREEMENT |

Plaintiff United States of America, by and through Joseph H. Harrington, Acting United States Attorney for the Eastern District of Washington, and Caitlin Baunsgard, Assistant United States Attorney for the Eastern District of Washington, and Defendant, KENNETH L. STONE, and the Defendant's counsel, Pete Schweda, agree to the following Plea Agreement:

1. Guilty Plea and Maximum Statutory Penalties:

The Defendant, KENNETH L. STONE, agrees to enter a plea of guilty to Count 1 of the Superseding Indictment filed on April 4, 2017, charging the Defendant with Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), 846.

The Defendant, KENNETH L. STONE, understands that the charge contained in the Superseding Indictment is a Class A felony charge and also understands that the maximum statutory penalty for this offense is not less than 10 years nor more than a life term of incarceration; a fine not to exceed $10,000,000; a term of supervised release of not less than 5 years up to a life term; denial of certain federal benefits; and a $100 special penalty assessment.

The Defendant, KENNETH L. STONE, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release, pursuant to 18 U.S.C. § 3583(e)(3), without credit for time previously served on post-release supervision.

2. Denial of Federal Benefits:

The Defendant understands that by entering this plea of guilty the Defendant is no longer eligible for assistance under any state program funded under part A of title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Further, the Court may deny the Defendant's eligibility to any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

3. The Court is Not a Party to the Plea Agreement:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward in the exercise of its discretion pursuant to United States v. Booker, 543 U.S. 220 (2005).

The Defendant also understands that should the sentencing judge decide not to accept the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing this plea of guilty.

4. Waiver of Constitutional Rights:

The Defendant, KENNETH L. STONE, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

(a). The right to a jury trial;

(b). The right to see, hear and question the witnesses;

(c). The right to remain silent at trial;

(d). The right to testify at trial; and

(e). The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

5. Elements of the Offense:

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), 846, the United States would have to prove beyond a reasonable doubt the following elements:

*First*, beginning on a date unknown, but by on or about May 2015 and continuing to on or about September 16, 2016, in the Eastern District of Washington, the Defendant, KENNETH L. STONE, entered into an agreement with one or more persons to commit the crime of distribution of 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, as charged in the Superseding Indictment;

*Second*, the Defendant became a member of the conspiracy knowing of at least one if its objects and intending to help accomplish it; and

*Third*, the agreement was to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, which would be reasonably foreseeable to her as a member of the conspiracy.

6. Statement of Facts:

The United States and the Defendant stipulate and agree that the United States could prove these facts beyond a reasonable doubt at trial and these facts constitute an adequate factual basis for KENNETH L. STONE's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this Plea Agreement. The parties further agree and stipulate that this factual basis is simply a summary to support the plea, it does not contain all facts which could be proven by the United States.

The Spokane Regional Drug Task Force was conducting an investigation into drug trafficking occurring at a residence located on Starr Road, in Newman Lake, Washington. Through that investigation, several controlled buys of methamphetamine where conducted from the residence utilizing a confidential informant. A state search warrant was ultimately executed at the residence on August 21, 2015. During the

execution of the search warrant, multiple individuals were located in a detached garage / shop area of the residence. Among those located in the detached garage was co-defendant, CHERYL L. SUTTON, and the Defendant, KENNETH L. STONE.

During the execution of the search warrant on the main residence, law enforcement officers searched the master bedroom of the residence. The protective sweep of the residence at the onset of the execution of the search warrant had revealed a handgun, in plain view, on the nightstand next to the bed in the master bedroom. In the subsequent search of the master bedroom, law enforcement officers located a briefcase between the bed and the nightstand, which contained approximately ¼ pound of methamphetamine and two digital scales capable of weighing pound quantities. Also located inside the briefcase were a series of test tube items with additional amounts of controlled substances to include what appeared to be heroin, methamphetamine, and marijuana. The loaded 9mm Glock firearm that had been located sitting on the nightstand in plain view just above the briefcase was seized as was a loaded shotgun, which was leaning up against the wall next to the briefcase.

A cooperating defendant ("CD") came forward during the subsequent investigation. The CD advised that he/she has known the Defendant and SUTTON for approximately the previous 5 or so years and the Defendant and SUTTON have been involved in the trafficking of controlled substances the entire time. The CD advised he/she has both been the source of supply for the Defendant and SUTTON's drug trafficking, as well as at times, been a customer. The CD advised that based on his/her observations, SUTTON is the main individual involved in the drug trafficking and that the Defendant materially assists her in various ways to further her distribution of controlled substances. The CD further described that he/she has previously provided the Defendant and SUTTON with pound quantities of methamphetamine as well as heroin in the 2015 timeframe. The CD also advised that SUTTON introduced him/her to one of SUTTON's alternative sources of supply for methamphetamine, co-defendant Clayton BUSKIRK (aka "Batman"), and was present on several occasions

when SUTTON picked up methamphetamine from BUSKIRK. The CD specifically recalled on one instance in 2015, BUSKIRK provided SUTTON with 4 ounces of methamphetamine and another instance where BUSKIRK provided SUTTON with 6 ounces of methamphetamine. During those transactions, the CD could see BUSKIRK had a safe in his residence, which contained multiple pounds of methamphetamine.

Additionally, law enforcement officers have interviewed numerous witnesses who had personal knowledge of the Defendant and SUTTON's drug trafficking activities as part of the state murder investigation into the death of an individual who also used to live at the Starr Road house, hereafter referred to as B.S. The United States would present testimony from several witnesses who at the time, lived in Montana and would travel to Spokane in order to obtain drug supply from B.S. at the Starr Road address. These witnesses would further testify that B.S. was in turn supplied with ounce quantities of methamphetamine and heroin from SUTTON. These individuals further advised that within a few days of B.S.' disappearance, they went to the Defendant and SUTTON's residence (Starr Road) to find B.S. and possibly buy heroin. They instead were greeted by the Defendant who was in possession of a shotgun and told them to get off the property.

The United States would also be able to present the testimony of another witness who advised law enforcement officers that he/she had personal knowledge of the Defendant and SUTTON dealing controlled substances from early 2015 through and until their arrest on federal charges. This individual further advised he/she obtained controlled substances directly from SUTTON and has personal knowledge of the Defendant and SUTTON orchestrating the robbery of a guest at a local Idaho motel in order to steal the guest's controlled substances and cash. The witness further has seen the Defendant and SUTTON in possession of pound-quantities of methamphetamine. This individual further advised that he/she had personally distributed ounce quantities of methamphetamine at the direction and behest of SUTTON as well as provided SUTTON with transportation for her to make other drug

deliveries. Additionally, SUTTON had taken this individual to BUSKIRK's residence on several occasions so the Defendant could obtain additional supply of methamphetamine. The individual personally observed BUSKIRK provide the SUTTON with pound-quantities of methamphetamine.

Two additional witnesses would testify that they had personally observed the Defendant and SUTTON with large supplies of methamphetamine and heroin, and obtained user quantities of methamphetamine and heroin from them while the Defendant and SUTTON lived at the Starr Road residence.

On July 30, 2016, the Spokane Police P.A.C.T was in pursuit of a subject who was fleeing from law enforcement and known to be in possession of a firearm. The individual was observed entering a residence on Indian Trial Road in Spokane, Washington. The P.A.C.T. team contacted the owner of the residence, BUSKIRK, and asked for consent to search for the individual and the firearm. BUSKIRK provided consent and during that search, law enforcement officers located approximately 1 pound of methamphetamine. BUSKIRK advised he was going to owe his source of supply $6,000 for the methamphetamine.

An additional witness has advised that he/she would provide testimony about transportation for SUTTON to distribute drugs in the Spokane area, as well as obtain additional controlled substances from BUSKIRK. This individual had also purchased controlled substances directly from the Defendant and SUTTON.

7. <u>The United States Agrees</u>:

(a). *Not to File Additional New Charges*:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Superseding Indictment, unless the Defendant breaches this Plea Agreement.

\\

(b). *Dismissal of Counts 2 & 3*:

At the time of sentencing, the United States agrees to move the Court to dismiss Counts 2 and 3 of the Superseding Indictment, charging Possession with Intent to Distribute 50 Grams or More of Actual (Pure) Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) (Count 2), and Possession of a Firearm in Furtherance of Drug Trafficking, 18 U.S.C. § 924(c)(1)(A)(i) (Count 3).

(c). *Not to File Penalty Enhancements*:

The United States agrees not to file an enhanced penalty information(s) to establish the Defendant's prior felony drug convictions pursuant to 21 U.S.C. § 851.

8. United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing. The Defendant also understands that pursuant to United States v. Booker, 543 U.S. 220 (2005), the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a), and to impose a reasonable sentence.

(a). Base Offense Level and Relevant Conduct:

The United States and the Defendant have no agreement as to the appropriate Base Offense Level to recommend to the Court. Each party is free to recommend whatever base offense level that party deems appropriate. *See* U.S.S.G. §2D1.1(a)(5); U.S.S.G. §1B1.3(a).

(b). Specific Offense Characteristics:

The United States and the Defendant have no agreement as to the specific offense characteristics to recommend to the Court. The United States will recommend to the Court a 2-level enhancement is appropriate as the Defendant possessed a dangerous weapon. *See* U.S.S.G. §2B1.1(b)(1). The Defendant is free to oppose this enhancement. The United States and the Defendant agree to recommend to the Court no additional specific offense characteristics are applicable.

(c). Acceptance of Responsibility:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Agreement; and enters a plea of guilty no later than July ~~18,~~ 25 2017; the United States will move for a three (3)-level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3)-level reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

(d). Criminal History:

The United States and the Defendant have made no agreement and make no representations as to the Defendant's Criminal History Category, which shall be determined by the Court at sentencing after the Presentence Investigative Report is completed.

9. Length of Incarceration:

The United States and the Defendant have no agreement as to what term of incarceration to recommend to the Court. The United States will recommend a term of incarceration at the low-end of the advisory guidelines. The Defendant is free to request any legal sentence.

10. Criminal Fine:

The United States and the Defendant agree to recommend the Court impose no criminal fine.

\\

\\

11. Supervised Release:

The United States and the Defendant agree to jointly recommend that the Court impose a five (5) year term of supervised release, to include the following special conditions, in addition to the standard conditions of supervised release:

(a). that the Defendant participate and complete such drug testing and drug treatment programs as the Probation Officer directs, but not to exceed six non-treatment drug tests per month during the imposed term of supervised release;

(b). that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer; and

(c). that the Defendant not contact any witnesses in his case.

12. Mandatory Special Penalty Assessment:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

13. Payments While Incarcerated:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program if the Court sentences the Defendant to a term of incarceration.

14. Judicial Forfeiture:

The Defendant, KENNETH L. STONE, agrees to voluntarily relinquish and forfeit any and all right, title, and interest to the United States of America that he has in currency seized from him pursuant to his arrest on September 15, 2016 and currency seized during the execution of a search warrant on Defendant's personal

property items on September 23, 2016. The currency subject to civil forfeiture includes:

U.S. CURRENCY

1) Approximately $344.30 U.S. currency seized on or about September 15, 2016, by the Federal Bureau of Investigation; and,

2) Approximately $278.00 and $16,620.00 U.S. currency seized on or about September 23, 2016, by the Federal Bureau of Investigation.

The Defendant agrees that the currency is subject to civil forfeiture to the United States pursuant to 21 U.S.C. § 881. The Defendant acknowledges that the United States can proved beyond a reasonable doubt that the currency is subject to forfeiture as property facilitating illegal conduct or represents property that constitutes or is derived from any proceeds obtained directly or indirectly from controlled substance offenses, in violation of 21 U.S.C. § 841, and is therefore civilly forfeitable to the United States pursuant to 21 U.S.C. § 881.

The Defendant agrees that he will not contest the civil forfeiture of the currency to the United States in the pending action *United States v. Approximately $17,242.30 U.S. Currency*, No. 2:17-CV-0097-SMJ ("civil forfeiture action"). The Defendant further agrees to withdraw any claim and/or answer he filed in the civil forfeiture action and execute a stipulation agreeing to an order of forfeiture of the currency in that action.

The Defendant agrees to take all steps as requested by the United States to pass clear title to the currency to the United States, to include the execution of pleadings and to testify truthfully in any forfeiture proceeding, if necessary.

The Defendant agrees to hold all law enforcement and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure and forfeiture of any currency and/or asset(s) covered by this agreement.

The Defendant further agrees to waive all constitutional, equitable and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

The Defendant waives any notice of forfeiture proceeding time frames and consents to the federal forfeiture of the currency and/or assets listed herein without further notice of forfeiture proceedings. Defendant consents to the destruction of any assets in which he may be the lawful owner and/or the return of any assets to their lawful owners, without further notice. Failure to comply with these obligations constitutes a breach of the Plea Agreement.

15. Additional Violations of Law Can Void Agreement:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever (excluding any charge the State of Washington may bring related to their investigation of the disappearance of B.S.) or if the Defendant tests positive for any controlled substance.

16. Waiver of Appeal and Collateral Attack Rights:

In return for the concessions that the United States has made in this Plea Agreement, the Defendant agrees to waive his right to appeal the conviction and sentence if the Court sentences the Defendant to a term of incarceration of not more than 240 months; and a term of supervised release of not more than five (5) years. The Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentencing, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not known by the Defendant, and which, in the exercise of due diligence, could not be known by the Defendant by the time the Court imposes sentence.

Should the Defendant successfully move to withdraw from this Plea Agreement or should the Defendant's conviction on Count 1 of the Superseding Indictment be dismissed, set aside, vacated, or reversed, this Plea Agreement shall become null and void; the United States may move to reinstate all counts of the Second Superseding Indictment No. 2:16-CR-0136-SMJ-2; and the United States may prosecute the Defendant on all available charges involving or arising from her participation in drug trafficking. Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack of the conviction or sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255.

17. Integration Clause:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

\\

\\

\\

\\

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Joseph H. Harrington
Acting United States Attorney

Caitlin A. Baunsgard
Assistant U.S. Attorney

Date 7/21/17

Stephanie Van Marter
Assistant U.S. Attorney

Date 7/21/17

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement, and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

KENNETH L. STONE
Defendant

7-21-17
Date

I have read the Plea Agreement and have discussed the contents of the Plea Agreement with Defendant KENNETH L. STONE. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in Defendant KENNETH L. STONE's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

Pete Schweda
Attorney for the Defendant

7/25/17
Date